Argument not to exceed 15 minutes per side. Mr. Kessner for the appellant. May it please the court, my name is Seth Kessner on behalf of the warden. I would like to reserve five minutes for rebuttal. Fine. In this case, Petitioner Gumm was granted habeas corpus relief on three claims. A Brady claim and the third and fourth claims in his petition referring to bad acts evidence that was submitted at trial. In relation to the Brady claim, again, the question is whether or not a reasonable probability of the nondisclosed evidence would have been changed the outcome of the trial. Very similar to Petitioner Baez's case, the warden would submit that the confession by Mr. Gumm, again, with the corroborating evidence that was found at the scene, would not have moved the jury to a different outcome. Considering that much of the Brady material that's alleged in the petition would have been either inadmissible or inadmissible because it was either hearsay or hearsay upon hearsay. In the course of the habeas proceedings, there has been no evidence that's been pushed forward to show that any of that evidence would have become admissible. Of course, admissibility is not a litmus test for the requirement for turning over Brady material necessarily. I didn't mean to insinuate that it was. My meaning was that you would have to show that the evidence would have had some outcome on the trial. Certainly, once this nondisclosed evidence was found, when you look at the case, you would have to see whether or not it would  have been admissible on trial, and if the evidence was inadmissible on trial, it per se would not have been able to affect the trial. Well, what you have in some of that material are other potential suspects or investigation that might have led to other suspects that would have permitted the defense attorney to raise an issue before the jury as to whether one of these other people around the location of the crime, and some of whom were fairly nefarious, might have actually been the perpetrator or perhaps even witnesses. There may have been witnesses. It seems to be a glaring omission not to have looked at any of these people. One of them even allegedly confessed to the crime. That would be Roger Cordray. How can we say that that Brady material should not have been turned over? Well, in relation to Mr. Cordray, the police did eventually investigate him, and he denied knowing Aaron Raines. They took his sneakers and his palm print, determined that the sneakers that he had didn't match the sneaker tread at the crime scene. His palm print was inconclusive, that he found no other links possible to him as far as the... The defense counsel wasn't told about him, and he had previously confessed, right? Right, and even if that information had been presented by defense counsel, arguably the state would have been able to put on the investigation that completely ruled him out as a suspect. And again, in relation to Petitioner Gump's confession, it's unlikely that a possible suspect that had been investigated by the police found not to have any relation to the crime would have affected the outcome of the trial in relation to a defendant who confessed to the crime. And his confession was detailed enough to have matched up with several of the pieces of evidence that were found at the criminal site, including the type of wounds that were found on Aaron Raines. Some of the witnesses were... Some of the witnesses were more likely to have found him alive at a later point in time than the police claimed or thought that the crime had occurred in the early evening. And so the timeline would have been thrown off of the events of the evening at issue if these other witnesses had been brought into the picture, or at least the defense attorney could have explored that with those witnesses. The defense attorney wasn't told about those individuals either. Shouldn't that have been turned over? Yes, I think ultimately it would have been better practice in the current practice of Hamilton County to have been able to turn that evidence over. I think, however, in light of where we are in the habeas proceedings as far as any deference that has to be given to the state court decision, and the fact that the perspective on evaluating the braiding material is that would have had a... Is it reasonable that the outcome of the trial would have changed in light of Petitioner Gumbs' confession? It's the warden's position that that evidence, even if presented, would not have been strong enough to overpower the strong evidence of his guilt by his own confession. Well, the criterion is whether we have faith in the... We have confidence, I think that's the word the cases use, whether we have confidence in the outcome of the trial. And with no impartial person or advocate on the defendant's behalf having had an opportunity to delve into these witnesses or these matters of evidence, it's sort of hard to say that we have confidence in the outcome. Wouldn't you say? The only reason we think that the evidence would be not determinative is because the police have made that determination. But no one outside the police have had an opportunity to look at the evidence and make that judgment. Doesn't that present a real problem with the Brady Standard? I think at this level of review the issue isn't whether it speculatively could have, but rather would it have. And you do have to look at the review as even if all this evidence was put in, whether or not it would have overcome the petitioner's own confession to the crime, which is corroborated by the evidence. And I don't think the confidence in the jury verdict is hurt or undermined when you have no examples of course of effect on his confession. And that's essentially the warden's position, that even if this material is deemed to have been Brady material, it has to be what would it have done in the course of the trial upon review. And we don't believe the outcome would have changed in light of the confession. That's what the jury would have been most focused on, and that's what ultimately would have carried the day. Well, you realize that what we have is three people here who have confessed in one form or another to being involved in the murder. There is no physical evidence to tie any one of them to the crime scene. I think that might have impressed the jury, and I'm recalling that we heard testimony that what Cordray said was that he picked the child up by the legs and swung him around so his head banged against the walls down there in that basement. And at least the allegation has been made that those activities. So I don't know, we're going to have to look at this, Mr. Kester, but it's a troubling situation. I would think that one correction is that we don't have a confession by a third person. We have a hearsay statement of someone saying that they heard that he confessed to the crime, and when he was pressed on it, he denied it. Well, that's true, but if the lawyers for these two men could have gone out and talked to the witnesses that repeated the fact that he had made a confession, found out from them exactly what he had said in the confession, confronted him with that, it might be an entirely different picture. I think that's the scenario that we're dealing with. Just real briefly, as far as the other two claims that his petition was granted on, as we argue in our briefs, we believe the court didn't apply the appropriate deference to the state court decisions. While you're on those topics, what about the inflammatory and prejudicial line of questions, the statements by the prosecutor about the sex habits of the petitioner and all this inflammatory stuff? The inflammatory language that was used to paint the petitioner as some sort of, for lack of a better way to put it, some sort of sexual pervert that was put in front of the jury, doesn't that, even on the effort, doesn't that raise a real problem in the fairness of the trial? Our main argument would be that the state courts found that the evidence could come in under state evidentiary law and that finding would be binding in federal habeas. Well, not if the state court finding was entirely and completely unreasonable based on Supreme Court jurisprudence. And that's really what I'm asking. I mean, I don't know if you have any cases to cite from the U.S. Supreme Court where something was done this outrageously and the Supreme Court said it was okay, or at least that you wouldn't overturn the outcome of a trial based on that. I mean, I think it's fair to say that the statements were definitely inflammatory. But in the course of the entire trial, the only two spots that it was raised was with the first witness in trial and then briefly discussed in the rebuttal testimony at closing. And again, the position would be that it was brought, the court found that it was a state evidentiary ruling and that it would be binding in federal habeas. But a state evidentiary ruling, if it deprives someone of due process, would violate U.S. Constitution. Right. So the question about the engaging in sex acts with animals, isn't that a sort of going to fundamental due process kinds of concerns? Well, I mean, as the state court found, I think, again, whether or not it infiltrated his trial, I don't know. But if it infiltrated his trial to prevent him from a fair trial, it's more likely than not that the jury would have convicted him based upon the confession and the corroborating medical evidence versus the testimony that he had a propensity to have bestiality. Our position is that because of the evidence that was against him, because of the confession, that the jury would more than likely have focused on that. And one of the causes of due process violation. Well, I think the argument was that the man was so sexually depraved and so sexually unhinged that he would have sex with anybody or anything, including animals and children. And that's why he probably committed this crime. That's what the jury was being attempted to be led to believe. You would concede that. I would say that the prosecutor, when he went down this testimony and looked to get that his reasoning for pursuing questions about what had happened in his past, that he had put on the record that he was trying to show that his behavior had changed significantly between getting in fights and being sexually abused. I think it's a fair interpretation, as you put it, that a jury could have taken it that he was a sexual deviant. But again, I think the overwhelming evidence of his confession is a strong sign of his guilt that the jury would have considered very strongly. And wouldn't have tainted his trial to the point that we would reach a due process violation. Well, Mr. Kester, it is true, though, that the prosecutor started off with this with the very first witness that was called. So it got planted early in the jury's mind. And then finished up with it so that the very last, I think you said it was in the rebuttal section of closing argument, that he brought it to the jury and ended up again. So he not only started out with it, but he finished up with it. I just can't understand why anybody trying to prosecute a case for the state would think that was appropriate. And I can't understand how the rules of evidence in Ohio would have permitted it. It just seems extraordinary to me. I'm not telling you that I've made up my mind about the due process claim. But it certainly is really just flabbergasting. Do you have a response or do you wish to? I just didn't know if there was a question as far as the due process violation. The answer I can say is that you're guaranteed a fair trial, not a perfect trial. And certainly you characterized the record accurately that it did happen in both the beginning of the trial and he did raise it near the end. I mean, those are the facts on the record. But again, they were isolated moments. And ultimately, again, I think the state evidentiary rule forces the hand in the habeas review that it doesn't reach a due process violation. Thank you. Good afternoon. My name is Kathleen McGarry. I'm here on behalf of Daryl Gumm and with me today is Larry Greger, also here on behalf of Mr. Gumm. Let me begin by saying, Judge Clay, I think you hit the nail on the head that there's no way we can have any confidence in the outcome of this case. Between the evidence that was disclosed or the state failed to disclose to the defense and the prejudicial evidence that was admitted against Mr. Gumm, this case cannot be a fair trial. I would point out that in the Kiles case out of the U.S. Supreme Court, contrary to what the warden seems to be saying here is we don't have to show that Mr. Gumm would have been acquitted because of this evidence. And this is not a question of whether there was sufficient evidence when you look at the Brady issue. The question is whether or not it was prejudicial. I get the sense from the Attorney General that he is conceding that the evidence was favorable to the accused and it was suppressed by the state, which are the first two prongs of Brady. And then the issue we get to is whether or not there was prejudice and whether or not there was a trial that was worthy of confidence. In this case, there was not. I believe that the evidence that was contained in the 170 pages of material that was not turned over to the defense could have been used to change the feel of the defense. To have undermined the way that the case ended up turning out. The district court, I believe, set forth a very plausible scenario of how this evidence could have been used. He specifically latched onto the evidence as it related to Roger Cordray saying that he could have been called as a witness. And if he had taken the Fifth Amendment, then they could have brought in the witnesses that he had confessed to to talk about the confession. Contrary to what the Attorney General has just said, Mr. Cordray was tied to this case. There was evidence. He had been living in the abandoned building in which Aaron was found. His coat was found in the building. There was a palm print that matched points on his palm print. In addition to the fact that he had confessed to at least four people concerning the fact that he was the one who had killed the little boy and described in detail how he did it. His knuckles and his hands were scraped up as if he had been in some sort of a confrontation that would have been explained by the fact that he had beaten up this child. So I think that when the Attorney General says there's nothing to tie him to this case, I think that's not true. There was a lot to tie him to this case. And then the other evidence that was mentioned about people who had been milling about around the abandoned building around the time. All the defense knew was that Mr. Gum had been seen three hours before the child disappeared. If he had known that there were all these other people who had been milling about the abandoned building, he could have investigated that as well. So I think that the fact that they failed to turn over this evidence really does put this case in a whole different light. At a minimum, a lot of the police records that were involved in the Brady evidence could have been used during the course of the police officers questioning during the trial to say, well, weren't there other people? Didn't you have other witnesses that you were investigating? Again, those records could have come in, those would have been admissible under Ohio Evidence Rule 804. So I think that for the Brady issue, that indeed that issue alone would have been enough for this court to have determined that the district court was correct, but we actually have two other issues also that played into this case. I think that, and I don't want to offend the court, but when the first witness in the case gets up and says that Mr. Gum wanted to fuck a horse or had fucked a horse, I think that really does kind of set the tone for the whole trial. I think that at that point the case was lost and it was going to be hard to get it back. And if you read the questioning by the prosecuting attorney, it was clear that he was out there trying to get the case back and he was out there trying to elicit that information alone. That questioning of the witness, Phyllis Thacker, she kept moving back and backing up from that testimony and he kept at her and kept at her and kept at her until she finally said it, and then he moved on. So I mean, while the... Counsel, was there an objection to that at the time, and if so, under what rule of Ohio law did the trial judge let it in? Well, it was interesting, Your Honor, when the questioning began with Phyllis Thacker, who was that first witness, there was questioning first about his deviant behavior and how he had changed and the defense counsel objected and they had a sidebar and the prosecutors didn't tell the court what was coming, but told the court that this is all background leading up to the what happened that night that Aaron was killed. And so the court allowed it in, thinking that it was going to somehow relate, but it never did. And then, yes, there was objections all along by the defense counsel in this case concerning the evidence of Ms. Thacker and how it really kept saying it's not relevant, Your Honor, what does it have to do? This incident happened in January, the victim was not killed until May. How does that relate to what happened in May? And the state, the trial court allowed it in. But no limiting instruction was given, is that right? That is correct, Your Honor, there was no limiting instruction. And when the magistrate judge and the district court judge looked at this evidence, they found, both of them, that this was one of those rare cases. And that's the word that they used, rare cases that meets the constitutional requirement that due process was violated. And he cited as reason supporting it that there was no limiting instruction, that the confession in this case was under suspicion. Mr. Gum, like Mr. Bias, was also found to be mentally retarded in Atkins proceedings a few years back. Frankly, counsel, I can't imagine what kind of limiting instruction the judge would give. I agree with you, Your Honor. This isn't impeachment, or it is impeachment, this isn't substantive evidence. It's just so completely irrelevant that unless the judge said pay no attention to that, I can't imagine what the limiting instruction would be. I agree. And then when you add on to that, I think, Judge Dutcher, you pointed this out, that one of the last things the jury heard before they went in to deliberate was all of this other evidence. The prosecutor went on for 10 pages of transcript talking about how Mr. Gum threw a raccoon into a bucket of paint. He kicked a dog to death. He threw his sister's dog into a space heater and it died. He tried to rape his sister's friend. He put a spoon on the stove and then put it against his nephew's arm. None of that has to do with whether or not Mr. Gum committed this crime, but that was all evidence that was admitted. Were there requests for limiting instructions for each of these things, and were there objections for each of these things? Well, Your Honor, the problem that happened in this case was the evidence that I just listed there was all in this psychiatric report that had been admitted. And defense counsel was placed in the position of saying he had had a witness that was going to testify, this Dr. Leland, who actually did testify concerning the fact that his confession should not be believed. This confession that the AG has said is the one piece of evidence that can't be overcome. But anyway, he had looked at the psychiatric report before he came into court to testify. And so then the prosecuting attorney stood up and said, well, we need to put in that whole report because he looked at it. Not that he relied on it, but he looked at it. I mean, because he had looked at it because he didn't have an opportunity to do his own testing of Mr. Gum before he actually was going to testify, so he was relying on some of the previous IQ testing that had been done in the case. He wasn't relying on this information that I just read to you. And defense counsel said to the trial court, Your Honor, please, this is hearsay. This is not admissible evidence. If the report's going to come in, you have to redact all of that information because it's hearsay evidence. There's nothing supporting it. These witnesses didn't testify. And the trial court said, no, under Ohio Rule 703, that it has to come in. So yes, it's a long answer to your question, Judge. But yes, he did object to the admission of this evidence, and there was no instruction. And because it was in closing argument... Did he ask for, after he objects and the evidence is allowed in, did he then ask for a limiting instruction? He did not, Your Honor. You could tell his utter frustration that the trial court was going to allow this whole report to go in. He kept saying, because he was there trying to make the decision, you could see his frustration of, Your Honor, you need to redact this, and then the court said he wasn't going to redact it, and he's like, well, now I have to make the decision, do I allow my only witness to be struck, the testimony to be struck, when that was the only evidence that was going to be against his client? Should I have that struck so that this other stuff doesn't come in? And so you could see that he was in a lot of turmoil over that. Can I ask one question? When that report was offered into evidence, was any part of it, from what you said, I gather none of it was read into the record at that time? So did the jury not know what was in the appendix to that psychological report until the information got put across in closing argument? That's correct. The only thing that the expert referred to from the report was the IQ testing and some of the other testing that had been done, because the focus of his testimony was that this confession should not be believed because the client was mentally retarded and was so susceptible to suggestion and had all sorts of problems like that. And so that was the focus of his testimony. So the only things he relied on from the report related to that, not to all this other evidence. And then the prosecutor pops up at the very last minute when there's no comeback and starts spouting off what was in the appendix, is that right? That is exactly what happened, Your Honor. So for those reasons, again, we're in a position where the district court has found three issues in our favor and we would ask that this court would affirm the decision of the district court. Thank you. Real briefly, because I know I went over my time in the beginning ten minutes. As far as the first two issues, as far as Petitioner Scum being Grant Habeas, I think the brief and the arguments previously addressed the warden's position on those two issues. The last one, as far as the psychiatric report, the only thing I would dispute is that on cross-examination the prosecutor asked him if he relied on the report in coming up with his decision on Petitioner Gum. He said he did rely on it. The state court made an adjudication that it could come in under Rule 703B and we would ask that the court grant that state court decision a deference. Unless the court has any other questions. Thank you very much.